UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------------ x
PEARL RODRIGUEZ, on behalf of herself and all    :
others similarly situated,                       :
                                                 :
                    Plaintiff,                   :      MEMORANDUM &
                                                 :      ORDER
    -against-                                    :
                                                 :      3:24-CV-1993 (VDO)
TRUMBULL INSURANCE COMPANY,                      :
HARTFORD INSURANCE COMPANY OF THE                :
SOUTHEAST, and JOHN DOES 1 through 21,           :
                                                 :
                    Defendants.                  :
------------------------------------------------------------------ x
```

**VERNON D. OLIVER**, United States District Judge:

This consolidated putative class action concerns the alleged failure of insurance companies to pay the full actual cash value owed to insureds when a vehicle is declared a total loss. Plaintiff Pearl Rodriguez, individually and on behalf of a proposed class, brought claims for breach of contract, negligence, tortious interference with contract, and declaratory judgment.

The remaining defendants, Trumbull Insurance Company ("Trumbull") and Hartford Insurance Company of the Southeast ("Hartford Southeast") (collectively, "Defendants") moved to: (1) compel Plaintiff to comply with their demand for an appraisal of the disputed amount of loss calculated for her June 2020 total loss claim with Trumbull under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, ("FAA"); or (2) in the alternative, dismiss Plaintiff's breach of contract claim against Trumbull for failure to state a claim under Fed. R. Civ. P. 12(b)(6); and (3) dismiss Plaintiff's declaratory judgment claim against Hartford Southeast for lack of standing under Fed. R. Civ. P. 12(b)(1).

For the reasons stated below, the motion to compel appraisal is **granted**; the litigation of the breach of contract claim against Trumbull is **stayed** pending the completion of said appraisal; and Defendants' motion to dismiss the claim against Hartford Southeast for lack of standing is **granted**.

## I.  BACKGROUND[1]

### A.  The Parties

Defendants Trumbull and Hartford Southeast, subsidiaries of The Hartford Insurance Group, Inc., write personal automobile insurance policies.[2] Defendants allegedly directed a third-party vendor, Mitchell International, Inc., to determine the actual cash value ("ACV") of total loss automobiles by applying a Projected Sold Adjustment ("PSA"). The PSA results in a downward adjustment to the value of each comparable vehicle used in the report to determine the ACV to account for what Defendants describe as typical consumer purchasing behavior, namely that vehicles sell for less than their listed prices.[3]

Plaintiff, a resident of Illinois, insured a 2007 Ford Focus through a personal automobile insurance policy written by Trumbull.[4] After the Ford Focus sustained damage in an accident in June 2020, Plaintiff filed a claim with Trumbull.[5] Plaintiff's car was declared a total loss and, subsequently, Trumbull made a payment on Plaintiff's total loss claim.[6]

---

[1] All citations to documents refer to the ECF document number (i.e., "ECF No. ___") and pagination in the ECF header unless otherwise noted.

[2] Second Amended Complaint ("SAC"), ECF No. 57 ¶¶ 13, 14.

[3] *Id.* ¶¶ 3–4.

[4] *Id.* ¶ 11.

[5] *Id.*

[6] *Id.*

Application of the PSAs to the comparable vehicles used in Mitchell's Vehicle Valuation Report resulted in Plaintiff being paid approximately $437.60 less than the full ACV.[7]

Plaintiff currently insures a 2019 Nissan Rogue under a personal auto insurance policy written by Hartford Southeast.[8] Plaintiff is concerned that, if her Nissan Rogue is declared a total loss, Hartford Southeast will underpay her total loss claim by again decreasing the ACV by the PSA for that totaled vehicle.[9]

### B. Procedural History

Plaintiff commenced this action against Trumbull and Hartford Southeast on December 17, 2024.[10] In July 2025, the Court consolidated this case with another case Plaintiff commenced against Hartford Fire Insurance Company ("Hartford Fire"), Case No. 25-cv-00972.[11] The operative complaint, the Second Amended Complaint, was filed on August 12, 2025 with the following causes of action: (1) breach of contract against Trumbull, (2) negligence against Hartford Fire, (3) tortious interference with contract against Hartford Fire, and (4) declaratory judgment against Hartford Southeast.[12] In September 2025, the parties filed a stipulation of dismissal as to Hartford Fire.[13] In light of Hartford Fire's dismissal, the third and fourth claims are brought against John Doe defendants who have not yet been identified or served.

---

[7] *Id.* ¶ 3.

[8] *Id.* ¶ 12.

[9] *Id.*

[10] ECF No. 1.

[11] ECF No. 55.

[12] *Id.*

[13] ECF No. 64.

As to the first and second claims—the breach of contract claim against Trumbull and the declaratory judgment claim against Hartford Southeast—there is a ripe motion by Defendants seeking dismissal and an order compelling appraisal.[14]

## II. LEGAL STANDARD

### A. Motion To Dismiss Under Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it," such as when "the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citation modified). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In considering a Rule 12(b)(1) motion to dismiss for lack of standing, courts in this Circuit construe "the complaint in [the] plaintiff's favor and accept as true all material factual allegations contained therein." *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012).

---

[14] ECF Nos. 49, 50, 51.

### B.     Motion to Compel Appraisal

Because an appraisal is a contractual alternative dispute resolution mechanism, like an arbitration provision, it is governed by the Federal Arbitration Act ("FAA"). *See Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) ("The appraisal process here constitutes arbitration for purposes of the FAA."). Accordingly, the Court analyzes the motion to compel appraisal under the same framework that governs motions to compel arbitration.

Pursuant to the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity[.]" 9 U.S.C. § 2. The Supreme Court has described the FAA as comprising provisions that reflect "both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation modified).

Courts apply a standard "similar to that applicable for a motion for summary judgment" in deciding motions to compel arbitration, where a court "consider[s] all relevant, admissible evidence submitted by the parties and . . . draw[s] all reasonable inferences in favor of the non-moving party." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702 (2d Cir. 2023) (citation modified). First, because "[q]uestions concerning the formation and existence of an arbitration agreement must be resolved by the courts in the first instance … before an agreement to arbitrate can be enforced, [courts] 'must first determine whether such [an] agreement exists between the parties.'" *Olin Holdings Ltd. v. State*, 73 F.4th 92, 101 (2d Cir. 2023) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017)). "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made," but that "burden does not require the moving party to show that the agreement would be

5

enforceable—only that an agreement to arbitrate existed." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022).

Second, "[o]nce the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to show[]the agreement to be inapplicable or invalid.'" *Id.* at 102. "'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996))

### III. DISCUSSION

Because a court cannot adjudicate the merits of a case without jurisdiction, *Carter*, 822 F.3d at 54, the Court will address Defendants' motion to dismiss for lack of subject-matter jurisdiction before determining whether appraisal must be compelled.

#### A. Motion to Dismiss for Lack of Standing

The Court first addresses Defendants' motion to dismiss Hartford Southeast (Plaintiff's current insurer) based on her alleged lack of standing under Fed. R. Civ. P. 12(b)(1). Specifically, Defendants assert that Plaintiff cannot identify an imminent threat of future harm sufficient to confer standing because she cannot show that she is likely to total another car.[15] In response, Plaintiff argues that there is a substantial risk that she will be subjected to a PSA adjustment in the future because Hartford Southeast itself concedes that she is at heightened risk of totaling her current vehicle.[16]

---

[15] ECF No. 49-1 at 30.

[16] ECF No. 50 at 46–48.

6

Article III of the United States Constitution requires a plaintiff to have standing to invoke federal jurisdiction. *Doody v. Bank of Am., N.A.*, 709 F. Supp. 3d 71, 78 (D. Conn. 2024). Whether a plaintiff has standing is a threshold inquiry, and a plaintiff bears the burden to show the following: "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021) (remanding with instructions that the case be dismissed where allegations were "insufficient to plausibly allege constitutional standing").

Plaintiff's claims and requests for relief against Hartford Southeast fail at the onset because Plaintiff does not affirmatively show an injury in fact. Plaintiff overstates the extent to which Defendants allegedly concede that that she will be injured prospectively. Charging Plaintiff a higher premium due to her previous accident, Plaintiff contends, is a concession that Plaintiff is personally likely to total another vehicle, and that Hartford Southeast will subsequently underpay her total loss claim.[17] But the Supreme Court has been quite clear in holding, repeatedly, "that threatened injury must be *certainly impending* to constitute injury in

---

[17] *Id.* at 14.

7

fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified). Plaintiff thus overinterprets Hartford Southeast's decision to apply a surcharge to Plaintiff's insurance premium as being conclusive evidence of an injury in fact. A higher insurance premium, standing alone, does not show that a totaled car is certainly impending. Because Plaintiff does not show there is a real, immediate, imminent likelihood that she will total her car, Plaintiff lacks standing to bring a claim for declaratory judgment. *See Grady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929, 940 (D. Minn. 2022) (holding that an insured plaintiff lacked Article III standing to seek declaratory judgment that improperly used adjustment to reduce ACV of totaled vehicle); *see also Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 217 (D. Del. 2022) (same).

The Court accordingly concludes that Plaintiff's claim for declaratory judgment against Hartford Southeast must be dismissed for lack of standing.

### B.    Motion to Compel Appraisal and Stay the Instant Litigation

In moving to compel appraisal, Defendants assert the personal automobile insurance policy Plaintiff maintained with Trumbull (the "Trumbull Policy") includes a provision for appraisal that governs this dispute (the "Appraisal Provision").[18] Plaintiff acknowledges that she agreed to the Trumbull Policy but contends that the Appraisal Provision is not an agreement for arbitration within the meaning of the FAA and that this dispute does not fall within its scope.[19] Even if an appraisal was necessary under the Trumbull Policy, Plaintiff

---

[18] ECF No. 49-1 at 14.

[19] ECF No. 50 at 27.

contends, arbitration is premature because the dispute involves a question of law for a court to resolve.[20]

### 1. Whether the FAA Governs the Appraisal Provision

The Court first considers whether the FAA governs the instant motion to compel appraisal.

In determining whether the appraisal provision is in fact an agreement to arbitrate under the FAA, a court must apply federal common law. *Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 144 (2d Cir. 2013). "A contractual provision that 'clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution' is arbitration within the meaning of the FAA." *Milligan*, 920 F.3d at 152 (quoting *In McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988)).

It is undisputed that the parties agreed through the Trumbull Policy to resolve certain disputes through a binding independent appraisal. The Appraisal Provision provides, in full, as follows:

> If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will: 1. Pay its chosen appraiser; and 2. Bear the expenses of the appraisal and umpire equally.[21]

---

[20] *Id.* at 46.

[21] SAC Ex. 1, ECF No. 57-1 at 28.

The Trumbull Policy also provides that "[n]o legal action may be brought against [Trumbull] until there has been full compliance with all the terms of this policy."[22] The plain text of the contract reveals that the parties intended the independent third parties' conclusion to be "binding." While the agreement includes an express reservation of rights on behalf of Trumbull,[23] that does not relevantly alter this analysis because the language of the Appraisal Provision—that "[a] decision agreed to by any two [appraisers] will be binding"—is unambiguous.[24]

The Court accordingly finds that the parties agreed to appraisal within the meaning of the FAA and proceeds with determining the scope of the Appraisal Provision.

### 2. Scope of the Appraisal Provision

While the Court found that the parties agreed to participate in appraisal, it must also determine whether Trumbull has satisfied its burden to show that the Appraisal Provision covers the claim at issue. As noted above, because appraisal provisions are interpreted under the same standard as arbitration clauses, the Court refers to arbitration precedent here.

In determining whether claims fall within the scope of an arbitration clause, a court is guided by "ordinary principles of contract interpretation" to assess whether the "particular dispute is covered by the language to which the parties agreed." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023). "If the allegations underlying the claims touch matters covered by" an arbitration clause, "then those claims must be arbitrated, whatever the legal labels attached to them." *Holick v. Cellular*

---

[22] *Id.* at 30.

[23] *Id.* at 28 ("We do not waive any of our rights under this policy by agreeing to an appraisal.").

[24] *Id.*

*Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) (citation modified). As a last resort, where "the agreement is ambiguous about whether it covers the dispute at hand, the court may apply a presumption of arbitrability." *Loc. Union 97*, 67 F.4th at 113 (citation modified).

      The Court finds the allegations in the Complaint squarely fit within matters covered by the Appraisal Provision. The breach of contract claim brought by Plaintiff arises out of a disagreement about the amount of loss suffered by Plaintiff. Plaintiff not only alleges that she was injured because she did not receive the full total loss benefits under a contract, but also that Trumbull's conduct in breaching Plaintiff's insurance contract by applying a "baseless" PSA reduced the value of Plaintiff's totaled automobile and thus constituted a breach of the implied covenant of good faith and fair dealing.[25] Because the pertinent language of the Appraisal Provision unambiguously provides that "[i]f we and you do not agree on the amount of loss, either may demand an appraisal of the loss,"[26] the Court must find that dispute here fall within the scope of the agreement to arbitrate. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) ("Where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary and popular sense."). In short, the crux of Plaintiff's breach of contract claim is Plaintiff's allegation that her loss was $437.60 higher than what Trumbull calculated because Trumbull thought the amount of loss was $2,095.78 and Plaintiff thought the amount of loss was $2,533.38.[27] Plaintiff does not offer any binding

---

[25] SAC ¶¶ 84, 85.

[26] SAC Ex. 1, ECF No. 57-1 at 28.

[27] SAC ¶¶ 49, 50.

law for the proposition that Plaintiff's breach of contract claim should not be subject to appraisal under Illinois law.[28]

### 3. Stay

"[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). The Court accordingly finds that the requested stay is warranted because the decision to compel appraisal would affect the breach of contract claim, i.e. the remaining claim in this case.

## IV. CONCLUSION

For the reasons stated above, the Court enters the following orders: Defendants' motion, to the extent it seeks to dismiss the claim for a declaratory judgment and to compel appraisal, is **granted**. Because the Court holds that appraisal must be compelled, it does not reach the issue of whether the Plaintiff fails to state a breach of contract claim. This litigation is stayed pending the completion of appraisal proceedings. The parties shall file a status report within **120 days** of this order.

SO ORDERED.

Hartford, Connecticut
November 10, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

---

[28] The parties' memoranda assert that Illinois law controls the interpretation of the policy at issue; such "implied consent [to the application of Illinois law] ... is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004).